IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JANET JOYNER and )
CONSTANCE LYNN BLACKMON, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　 )
　　v. ) 1:07CV243
　　　　　　　　　　　　　　　　　　 )
FORSYTH COUNTY, NORTH )
CAROLINA, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　Defendant. )

ORDER

BEATY, District Judge.

This matter was before the Court on Defendant Forysth County's ("Defendant") Motion for Relief [Doc. # 126] filed on June 13, 2014. Plaintiffs Janet Joyner and Constance Lynn Blackmon ("Plaintiffs") responded to the Motion on August 11, 2014 [Doc. #133], and Defendant filed a Reply Brief [Doc. #134] on August 25, 2014. A hearing on the matter was held on November 20, 2014, in which this Court ordered that the injunction against Defendant's sponsorship of sectarian legislative prayers should be dissolved. This Order is entered consistent with this Court's findings and conclusions as stated at the November 20, 2014 hearing.

I.　　CHANGED LAW IN TOWN OF GREECE

This Court and the Fourth Circuit premised their rulings in the present case on the sectarian nature of the prayers delivered at Defendant's board meetings. These rulings were based on the existing Supreme Court precedent at the time, which both this Court and the Fourth Circuit understood as prohibiting sectarian legislative prayer. In May of this year, in the

decision of Town of Greece v. Galloway, 134 S. Ct. 1811, 188 L. Ed. 2d 835 (2014), the Supreme Court held that sectarian legislative prayer does not violate the First Amendment. Relying on the history and tradition of legislative prayer, the Supreme Court held that "[a]n insistence on nonsectarian or ecumenical prayer as a single, fixed standard is not consistent with the tradition of legislative prayer outlined in the Court's cases." Id. at 1820. The Supreme Court rejected a rule that legislative prayer must be nondenominational and invoke only a generic God, because sectarian prayer can still serve the legitimate function of solemnizing the proceedings and invoke universal goals of cooperation: "Prayer that reflects beliefs specific to only some creeds can still serve to solemnize the occasion . . . ." Id. at 1823.

Moreover, the Supreme Court determined that the fact that the Town of Greece's nondiscriminatory policy resulted in the majority of prayers being Christian and the fact that they were being delivered by Christian ministers did not contravene the First Amendment of the Constitution. The Supreme Court explained:

> That nearly all of the congregations in town turned out to be Christian does not reflect an aversion or bias on the part of town leaders against minority faiths. So long as the town maintains a policy of nondiscrimination, the Constitution does not require it to search beyond its borders for non-Christian prayer givers in an effort to achieve religious balancing.

Id. at 1824.

Thus, Town of Greece presents a significant change in the law since entry of the original injunction. See Fed. R. Civ. P. 60(b)(5); Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 122 (4th Cir. 2000). A court therefore must modify or dissolve an injunction when "a significant change either in factual conditions or in law," renders future application of the injunction

2

inequitable. Agostini v. Felton, 521 U.S. 203, 215, 117 S. Ct. 1997, 2006, 138 L. Ed. 2d 391 (1997) (quoting Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 384, 112 S. Ct. 748, 760, 116 L. Ed. 2d 867 (1992)); United States v. Snepp, 897 F.2d 138, 141 (4th Cir. 1990) ("A modification [to an injunction] may be granted where warranted by a change in the law or the circumstances."). Because Town of Greece effected a significant change in the law of legislative prayer, the Court finds that Defendant is entitled to relief. Thus, to the extent that the injunction entered by this Court against Defendant enjoined the delivery of per se sectarian legislative prayers at Forsyth County Board meetings, the injunction must be dissolved in light of Town of Greece.

II.   WORDS OF CAUTION FROM TOWN OF GREECE

However, in lifting the injunction, the Court reminds Defendant that it may not discriminate for or against any religion in drafting or implementing its prayer policy. As a caveat, the Supreme Court observed in Town of Greece that some legislative prayer practices indeed could still cross the constitutional line, reaffirming its warning in Marsh v. Chambers, 463 U.S. 783, 103 S. Ct. 3330, 77 L. Ed. 2d 1019 (1983), regarding a potentially unconstitutional prayer practice: "[T]he 'content of the prayer is not of concern to judges,' provided 'there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief.'" Town of Greece, 134 S. Ct. at 1821-22 (quoting Marsh, 463 U.S. at 794-95, 103 S. Ct. at 3338, 77 L. Ed. 2d 1019). The Supreme Court further cautioned that "[i]f the course and practice over time shows that the invocations denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion, many present may consider

3

the prayer to fall short of the desire to elevate the purpose of the occasion and to unite lawmakers in their common effort." Id. at 1823. Thus, a "pattern of prayers that over time denigrate, proselytize, or betray an impermissible government purpose," may present a constitutional violation, and Defendant should strive to prevent such an occurrence. See id. at 1824. Additionally, Defendant should ensure that it "maintains a policy of nondiscrimination," which does not "reflect an aversion or bias on the part of town leaders against minority faiths." Id.

Therefore, the Court will lift the injunction without prejudice to the Plaintiffs presenting a proper case, should such a case exist, so as to demonstrate that Defendant's prayer policy represents a pattern or practice over time that presents a constitutional violation as envisioned by Town of Greece. Such a proper case may also include a claim by Plaintiffs that Defendant coerces public participation in its legislative prayers, a claim not supported by the current record nor properly before the Court in the context of lifting the injunction against the sectarian content of prayers delivered at Defendant's meetings. See id. at 1825-26; Joyner v. Forsyth Cnty., 653 F.3d 341, 355 (4th Cir. 2011) (observing in the present case that "plaintiffs were not coerced," even though "they claim pressure to stand and bow their heads along with the rest or risk having their civic participation correspondingly devalued.").

III. CLARIFYING DEFENDANT'S POLICY TO ENSURE NONDISCRIMINATION

As already noted, while Defendant may permit its prayer givers to deliver sectarian invocations, Defendant is advised that it should ensure that such prayers do not develop into a pattern of proselytization or disparagement, and that its policy must not discriminate against

any religion. To this end, the Court observes that Defendant would be wise to clarify certain aspects of Defendant's policy. Defendant's policy should reflect the following clarifications, as argued by Defendant at the hearing on this matter and in its Reply Brief [Doc. #134] on this motion.

A.    "Eligible member of the clergy/religious leader in Forsyth County"

Defendant's policy invites "eligible member[s] of the clergy," or "religious leader[s]" to provide invocations at its board meetings. (Policy [Doc. #133-1] at 5.) Defendant should clarify its apparent intent that an "eligible member" does not have to be a formal religious leader and is not determined by Defendant, and that instead eligibility depends upon a congregation's own selection of a prayer giver. (Def.'s Rep. Br. [Doc. #134] at 5-6.)

B.    "Confirm inclusion" or petitioning to be on the Congregations List:

Defendant should redraft this section of its policy to clearly reflect its position that the Policy "created a mechanism to allow any assembly overlooked by the [clerk's annual] search to be added to the list of invitees." (Id. at 7.) As currently written—that a congregation may "confirm its inclusion" in the list—the policy conveys the message that a congregation may simply inquire whether it is on the list, but not that this inquiry opportunity provides a means for an omitted congregation to be added to the list. (See Policy [Doc. #133-1] at 5.)

C.    "Established presence"

Defendant's requirement that a congregation have an "established presence" in order to be on its Congregations List is ambiguous in meaning. (See id.) Accordingly, Defendant's policy should reflect its representation that "size of the assembly" is irrelevant and that an

5

assembly in existence even for a short period of time is not excluded from the list. (Def.'s Rep. Br. [Doc. #134] at 6.)

D. Nonbelievers

Defendant represented in its Reply Brief that an agnostic or atheist assembly would be included on the Congregations List and a member of such an assembly would not be prevented from giving the invocation at a Board meeting. (Id. at 7-8.) This should be affirmed by Defendant.

These representations by Defendant, if affirmed by Defendant, could indeed help clarify and highlight the nondiscriminatory nature of Defendant's invocation policy. As such, Defendant would be wise to update its policy to reflect such understandings.

IV. CONCLUSION

For the reasons discussed above and at the corresponding hearing on this matter, the Court will dissolve the injunction against Defendant's sponsorship of sectarian prayer at its board meetings. IT IS THEREFORE ORDERED that Defendant's Motion for Relief [Doc. #126] is hereby GRANTED and the conditions of the Court's January 28, 2010 Order and Injunction [Doc. #99] are hereby VACATED going forward.

This the 21st day of November, 2014.

_____
United States District Judge

6

Case 1:07-cv-00243-JAB-LPA   Document 136   Filed 11/21/14   Page 6 of 6